UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JASON WIMBERLY,

Case No.: 26-cv-05949 (JPO)

Plaintiff,

-against-

ATLANTIC DIALYSIS MANAGEMENT SERVICES, LLC; CENTRAL PARK DIALYSIS CENTER; TERENCE CARDINAL COOKE HEALTH CARE CENTER / ARCHCARE; GOLDBERG SEGALLA LLP, SCOTT R. GREEN; CHARLES LAZO; HILARIO FLAUTA LORNA BAUTISTA, R.N.; PAULINE [LAST NAME UNKNOWN]; ENRIQUE [LAST NAME UNKNOWN]; YASMIN [LAST NAME UNKNOWN]; FAUSI [LAST NAME UNKNOWN]; JACKIE [LAST NAME UNKNOWN]; ROSEMARY JOHNSON; GLENN [LAST NAME UNKNOWN]; JAVITA BANKS, LMSW; RACHEL JAGDEO; JODOMUTT GANESH BHAT, M.D.; AND PREMILA BHAT,

Defendants.
----------------------------------------------------------------X

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. § 12(b)(6)</u>**

KUTNER CORRADO & FRIEDRICH, LLP

666 Old Country Road, Ste. 401
Garden City, NY 11530
Tel. No.: 516.689.5448

Attorneys for Terence Cardinale Cooke Health Care Center

Partner
Charles E. Kutner, Esq.

# TABLE OF CONTENTS

PRELIMNARY STATEMENT……………………………………………...…………………1

PROCEDURAL AND FACTUAL HISTORY…………………………………………………2

ARGUMENT……………………………………………………………………………...3

I. **STANDARD OF REVIEW ON A MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION PURSUANT TO F.R.C.P. § 12(b)(6)**……………………………………………………………3

a. **The claims of violations of the Americans with Disability Act (Count 1 – ADA Interference and Retaliation, 42 U.S.C. § 12203(a), (b)) fail to state a cause of action**…………………………………………………………4

b. **The "retaliation" cause of action (Count 3) pursuant to N.Y.C. Admin. Code § 8-107(7), also cannot remain for the same reasons as the prior cause of action**……………………………………………………………..7

c. **The "Coercion and Interference" cause of action (Count 5) pursuant to N.Y.C. Admin. Code § 8-107(19) also cannot stand for the same reasons as the prior two cause of action noted above**……………………….....8

d. **The "Retaliation" cause of action (Count 6) pursuant to N.Y. Exec. Law § 296(7) must be dismissed because the claimed retaliative conduct is not alleged to be attributable to TCC**…………………………………..8

e. **The claim of violations of nursing home law (Count 9), pursuant to N.Y. Pub. Hlth. Law §§ 2801-d and 2803-c, must be dismissed for failure to state a cause of action because plaintiff was never a patient of the defendant nursing home**……………………………………………....8

f. **The cause of action for Intentional Infliction of Emotional Distress (Count 12 – hereinafter, "IIED") must be dismissed because plaintiff has not alleged the requisite elements**……………………………………...9

g. **Plaintiff's claim of premises liability and environmental hazards (Count 16) must be dismissed for failure to state a cause of action, as plaintiff has not sufficiently pled all necessary elements**………………………11

**h. The claim for Declaratory Judgment (Count 20) pursuant to 28 U.S.C. §§ 2201–2202 must be dismissed because defendant TCC was not properly alleged to be involved in any retaliation against plaintiff, it is duplicative of all other causes of action, this is not an appropriate case of a declaratory judgment, and such declaratory judgment will provide no actual remedy to plaintiff**…………...14

**i. Plaintiff's claim of a Conspiracy to Deprive of Equal Protection (Count 24) pursuant to 42 U.S.C. § 1985(3) must be dismissed because plaintiff has failed to plead all the necessary elements of this cause of action**…………………………………………………….…15

**j. The cause of action for conspiracy to "Obstruct Justice and Deter Federal-Court Participation" (Count 25) pursuant to 42 U.S.C. § 1985(2), must be dismissed for being insufficiently pled**………………………...18

**k. The claims of Negligent Supervision (Count 27) must be dismissed because defendant TCC had no duty to supervise plaintiff's dialysis treatment at CPDC**……………………………………………………………19

**II. LEAVE TO AMEND SHOULD BE DENIED**……………………………………...…19

CONCLUSION…………………………………………………………………………..20

# TABLE OF AUTHORITIES

## CASES

*Abacus Fed. Sav. Bank v Lim*, 75 A.D.3d 472 (N.Y. App. Div 2010)……………………..……..16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………...……….3

*Baum v. Northern Dutchess Hospital*, 764 F. Supp. 2d 410 (N.D.N.Y. 2011)…………………….9

*Britt v. Garcia*, 457 F.3d 264 (2d Cir.2006)……………………………………………...15

*Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998 (2d Cir.1969)…………………………14

*Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)………………………………………...14

*Dolan v. Connolly*, 794 F.3d 290, 2015 WL 4477342,
2015 U.S. App. LEXIS 12677 (2d Cir. 2015)…………………………………………..15, 17

*Faulkner v City of Yonkers*, 105 A.D.3d 899 (N.Y. App. Div. 2013)……………………………16

*Fellows v. Rosati*, 2019 NY Slip Op 3508 (N.Y. App. Div. 2019)………………………………11

*Frasier v. General Electric Co.,* 930 F.2d 1004 (2d Cir.1991)……………………………………3

*Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115 (N.Y. Ct. of App. 1993)…………………..9, 11

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*,
968 F.2d 286, 290-91 (2d Cir. 1992)……………………………………………………...16

*Klein v. Metro. Child Servs., Inc.*, 2012 N.Y. Slip Op 07636 (100 A.D.3d 708)………………...11

*Kush v. Rutledge*, 460 U.S. 719(1983)……………………………………………………...17

*Murphy v. American Home Products Corp.,* 58 N.Y.2d 293 (1983)……………………………10

*Novick v. South Nassau Communities Hospital*, 136 A.D.3d 999 (N.Y. App. Div. 2016)………..9

*O'Diah v New York City*, Case No. 02 CIV. 274 (DLC),
2002 U.S. Dist. LEXIS 15507 (S.D.N.Y. Aug. 21, 2002)………………………………………3

*Randone v. State of New York*, 30 Misc.3d 335, 910 N.Y.S.2d 355 (N.Y.Ct.Cl.2010)……………9

*Sallustio v. Southern Westchester Bd. of Coop. Educ. Servs*.,
2025 NY Slip Op 00690 (N.Y. App. Div 2025)…………………………………………….19

*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667 (1950)……………………………………14

*Specht v. City of New York*, 15 F.4th 594 (2d Cir. 2021)………………………………………..9

*Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008)……………...12

*Wimberly v. Atlantic Dialysis Management Services, LLC*,
Case No. 1:24-cv-09269-JPO (U.S.D.C. S.D.N.Y.)……………………………………...7, 19

*World Wrestling Fedn. Entertainment, Inc. v Bozell*, 142 F.Supp. 2d 514 (S.D.N.Y. 2001)……..16

*Zhang Jingrong v. Chinese Anti-Cult World Alliance*,
311 F. Supp. 3d 514 (E.D.N.Y. Apr. 23, 2018)………………………………………………..16

**STATUTES**

42 U.S.C. § 1985(2)……………………………………………………………………….18, 19

42 U.S.C. § 1985(3)……………………………………………………………………...3, 15

42 U.S.C. § 12102………………………………………………………………………..17

42 U.S. Code § 12203……………………………………………………………………..2, 4

N.Y.C. Admin. Code § 8-107(7)………………………………………………………..2, 7

N.Y.C. Admin. Code § 8-107(19)……………………………………………………….2, 8

N.Y. Pub. Hlth. Law 2801(2) and (3))…………………………………………………….9

N.Y. Pub. Hlth. Law § 2801-d……………………………………………………….2, 8, 9

N.Y. Pub. Hlth. Law § 2803-c……………...........................................................................2, 8, 9

**RULES**

F.R.C.P § 12(b)(6)………………………………………………………………………..1, 3, 20

**PRELIMINARY STATEMENT**

Defendant TERENCE CARDINAL COOKE HEALTH CARE CENTER, s/h/a TERENCE CARDINAL COOKE HEALTH CARE CENTER / ARCHCARE (hereinafter, "TCC") respectfully submit this memorandum in support of the motion to dismiss, pursuant to F.R.C.P § 12(b)(6), as it fails to raise any viable causes of action against the defendant.

TCC's only involvement in this case is that they leased space to codefendant Atlantic Dialysis Management Services (hereinafter, "Atlantic" or "ADMS"), who allegedly operates defendant Central Park Dialysis Center (hereinafter, "CPDC"), where plaintiff sought dialysis treatment for his end stage renal disease ("ESRD"). The individually named codefendants are not employees of TCC. First Amended Complaint ¶ 13-15, ECF No. 4. There are no employees of TCC named in this action, nor does plaintiff claim to have had any interaction with TCC staff. The only time TCC staff are mentioned in this action at all is paragraph 38 of the Amended Complaint, in which plaintiff claims to have sent an email to codefendant "Dr. Bhat", upon which, rather vaguely, "TCC nursing staff" were copied on the email, along with several other parties unknown to defendant. Id. ¶ 38. It is not clear to whom, if anyone, on the TCC's nursing staff that this email was sent, nor seemingly was there any response to the email from TCC. For all intents and purposes, the plaintiff does not allege to have had any substantive interaction with TCC.

It is important to point out that TCC does not own, operate, manage, or control ADMS, nor is that alleged anywhere in the Amended Complaint[1]. TCC owns the building where CPDC and other entities operate, and TCC leases space to ADMS/CPDC. TCC does not instruct ADMS or CPDC how to operate their business, nor does they oversee ADMS/CPDC staff.

[1]As an attorney with sufficient knowledge of the facts, after working with TCC for several years, I can represent that TCC does not own ADMS or CPDC.

It is additionally important to note that the plaintiff was neither a patient nor resident of TCC, nor does he allege that he ever was. The plaintiff received dialysis treatment from CPDC. TCC is a "residential health care facility" (a.k.a., "nursing home") as defined in N.Y. Pub. Hlth. Law 2801(3). The plaintiff was never admitted to the nursing home. He only attended the CPDC dialysis clinic.

## PROCEDURAL AND FACTUAL HISTORY

This case was commenced by the filing of a Summons and Complaint on or about July 14, 2026. ECF No. 1. Shortly thereafter, the plaintiff filed an Amended Complaint on or about July 22, 2026. ECF No. 4.

In the interest of brevity, the facts are adopted from the Amended Complaint. *See* First Amended Complaint, ECF No. 4). To briefly reiterate, the individually named codefendants are not employees of TCC. Id. ¶ 13-15. There are no individual employees of defendant TCC. TCC has no ownership of ADMS where the facts are alleged to have taken place. And even though it has no bearing on this matter, the undersigned notes that TCC has no relationship with the GOLDBERG SEGALLA defendants (hereinafter, "GB Defendants").

Of the twenty-eight (28) causes of action enumerated in the complaint, eleven (11) of them are directed at defendant TCC. They are as follows:

COUNT 1: ADA Interference and Retaliation, 42 U.S.C. § 12203(a), (b)

COUNT 3: NYCHRL Retaliation, N.Y.C. Admin. Code § 8-107(7)

COUNT 5: NYCHRL Coercion and Interference, § 8-107(19)

COUNT 6: NYSHRL Retaliation, N.Y. Exec. Law§ 296(7)

COUNT 9: N.Y. Public Health Law§§ 2801-d and 2803-c

COUNT 12: Intentional Infliction of Emotional Distress

COUNT 16: Negligence: Premises Liability and Environmental Hazard

COUNT 20: Declaratory Judgment

COUNT 24: Conspiracy to Deprive of Equal Protection, 42 U.S.C. § 1985(3)

COUNT 25: Conspiracy to Obstruct Justice and Deter Federal-Court Participation,

COUNT 27: Negligent Supervision

Only these cause of action are addressed in this motion. As is elaborated below, the plaintiff has failed to sufficiently plead any viable cause of action against defendant TCC.

## ARGUMENT

## I.

## STANDARD OF REVIEW ON A MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION PURSUANT TO F.R.C.P. § 12(b)(6)

"In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co*., 930 F.2d 1004, 1007 (2d Cir.1991). "To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include enough facts to state a claim for relief that is plausible on its face . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Citations and internal quotations omitted.) *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. The rule is no different where the plaintiff is pro se. See, e.g., *O'Diah v New York City*, Case No. 02 CIV. 274 (DLC), 2002 U.S. Dist. LEXIS 15507, at *37 (S.D.N.Y. Aug. 21, 2002) ("A pro se plaintiff's 'conclusory

allegation … without evidentiary support or allegations of particularized incidents, does not state a valid claim.'").

As stated below, none of the causes of action are sufficiently supported by any of the facts in the case. The only connection that this plaintiff has to defendant TCC is that TCC leased space in their building to codefendants ADMS/CPDC, where plaintiff was treated with dialysis for his end stage renal disease ("ESRD").

**a. <u>The claims of violations of the Americans with Disability Act (Count 1 – ADA Interference and Retaliation, 42 U.S.C. § 12203(a), (b)) fail to state a cause of action</u>.**

Section "b" of 42 U.S. Code § 12203, a provision within the Americans with Disability Act, states that:

> *It shall be unlawful to coerce to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.*

Plaintiff fails to raise a cause of action for violations of the ADA because there are simply no facts in the Complaint to state what TCC or its staff did or did not do to interfere or retaliate against the plaintiff. There are also no facts to state that the plaintiff ever personally interacted with TCC staff at all. Suffice it to say, a necessary element of this claim is that the defendant undertook some type of conduct that could be classified as coercion, intimidation, threats, or interference. Here, plaintiff does not state any conduct attributed to TCC.

Just as many of the other enumerated causes of action, under the subheading for this claim, plaintiff lists "All Defendants", erroneously lumping TCC together with the other codefendants. The only allegations of conduct that appear in this section regard some of the other codefendants,

not TCC. In attempt to establish the claims of imitation, coercion, threats and interference, plaintiff lists the following conduct:

> *(a) The January 30, 2025 letter conditioning treatment on behavioral restrictions;*
> *(b) The May 10, 2025 Behavioral Plan threatening ER diversion;*
> *(c) Lying about chair availability;*
> *(d) Failing to arrange transportation, causing missed dialysis;*
> *(e) Stonewalling records requests;*
> *(f) Physical abuse;*
> *(g) Prematurely terminating treatment and directing Plaintiff not to document it;*
> *(h) Characterizing protected communications as "gossip"; and*
> *(i) Initiating involuntary-discharge proceedings through the ESRD Network*
> First Am. Compl. ¶ 57.

Regarding item "a", this refers to a letter written by codefendant attorneys, SCOTT R. GREEN (hereinafter "Green") and CHARLES LAZO (hereinafter, "Lazo") of the GOLDBERG SEGALLA law firm. Plaintiff also refers to this letter as the "Goldberg Segalla" letter, or "GB" letter. Id. ¶ 27-28. There are no allegations anywhere in the Complaint that TCC was in anyway involved in drafting, editing, amending, sending, receiving, influencing, discussing, or ever possessing this letter.

Regarding item "b" above, plaintiff clearly states that the "Behavior Plan" was issued by ADMS. Id. ¶ 34. There are no claims that TCC was involved with developing the behavior plan.

Regarding item "c", plaintiff clearly alleges that CPDC staff told him that there were not enough chairs available for him. Id. ¶ 36-37. Aside from the fact that this statement does not, in any way, suggest intimidation, coercion, or threats, the statement did not come from TCC or its staff.

Regarding item "d", TCC was not responsible for arranging any transportation for the plaintiff, nor was this alleged in the complaint.

Regarding item "e", the plaintiff does not allege that TCC "stonewalled" any requests from the plaintiff to release medical records. The plaintiff nebulously claims "Defendants refused and

stonewalled Plaintiff's requests for billing records and incident reports. . ." Id. ¶ 43. By inference, plaintiff seems to be referring to a request he made to ADMS/CPDC for his medical records. Regardless, he does not state when such request was made, how such request was made, to whom such request was made. Moreover, upon information and belief, defendant TCC does not maintain any records for plaintiff because TCC never treated the plaintiff, nor is alleged to have treated him.

Regarding item "f", plaintiff does not allege any physical abuse by any TCC staff. Instead, plaintiff alleges abusive acts undertaken by codefendants JACKIE, YASMIN, FAUSI, ENRIQUE, and ROSEMARY JOHNSON. Plaintiff concedes these individuals are employees or agents of ADMS/CPDC. First Am. Compl. ¶ 15, ECF No. 4.

Regarding item "g", Plaintiff does not say who exactly decide to terminate his dialysis. Presumably, it was someone at CPDC, where he was receiving dialysis. However, it absolutely could not have been anyone from TCC, as they did not treat the plaintiff, nor are they alleged to have, nor did they have any control over ADMS/CPDC or their alleged decision to terminate plaintiff's dialysis.

Regarding item "h", this is a claim that frankly does not make any sense. Plaintiff does not sufficiently articulate what protected communications were characterized as "gossip." The only allegation in the complaint pertaining to this regards the codefendant JAVITA BANKS (hereinafter "Banks") who told another patient (presumably at the dialysis facility, but this is unclear) to not listen to plaintiff's transportation concerns "because it's all gossip." Id. ¶ 39. Plaintiff does not explain how this is either protected communications nor any type of intimidation, interference, threat, or coercion by any of the defendants. Regardless, the "gossip" statement came from a codefendant who is alleged to be an employee of CPDC. There is, once again, no connection to TCC.

Finally, item "i" is also not attributable to TCC. The facts pertaining to this claim state that ADMS/CPDC commenced "involuntary-discharge proceedings" against the plaintiff. Id. ¶ 45. There are no allegations that TCC was in any way involved with any involuntary discharge, nor could TCC discharge a patient that they were never treating.

Accordingly, this cause of action cannot stand because plaintiff's facts relating to claims of intimidation, coercion, interference, or threat, clearly have nothing to do with TCC.

**b. The "retaliation" cause of action (Count 3) pursuant to N.Y.C. Admin. Code § 8-107(7), also cannot remain for the same reasons as the prior cause of action.**

The applicable provision of §8-107 essentially states that it is unlawful to retaliate or discriminate against any person for exercising a "covered activity." Here, Plaintiff claims that the "covered activity" occurred through litigating an earlier lawsuit against ADMS. The defendants (all erroneously lumped together, once again) supposedly discriminated or retaliated against plaintiff simply for litigating his claims. Rather confusingly, while there was indeed a prior lawsuit premised on the same claims as in this case (*Wimberly v. Atlantic Dialysis Management Services, LLC*, Case No. 1:24-cv-09269-JPO (U.S.D.C. S.D.N.Y.), TCC was not a party to that action. That action has since been dismissed. It is difficult to imagine how or why an entity, not named in the prior lawsuit, would attempt to retaliate against a plaintiff who had no claims against them at that time.

Under the heading in the First Amended Complaint for this cause of action, there is merely one paragraph referencing retaliation "through the conduct described in ¶ 57" (the same list as in section "a" above). First Am. Compl. ¶ 62, ECF No. 4). For the same reasons as were just stated above (which do not bear repeating), this cause of action also cannot stand because none of the alleged conduct is attributable to TCC's staff.

**c. The "Coercion and Interference" cause of action (Count 5) pursuant to N.Y.C. Admin. Code § 8-107(19) also cannot stand for the same reasons as the prior two cause of action noted above.**

N.Y.C. Admin. Code § 8-107(19) essentially states that it is unlawful to interfere with a protected right. Again, plaintiff points to the same list of supposedly "intimidating," "coercive," and "interfering" conduct enumerated in ¶ 57. First Am. Compl. ¶ 64, ECF No. 4. Based upon the same logic of the two sections above, this cause of action must also be dismissed because none of the listed conduct is attributable to TCC.

**d. The "Retaliation" cause of action (Count 6) pursuant to N.Y. Exec. Law § 296(7) must be dismissed because the claimed retaliative conduct is not alleged to be attributable to TCC.**

N.Y. Exec. Law § 296(7) finds that it shall be unlawful to retaliate against an individual for "opposing forbidden practices" – in this instance, making a complaint of discrimination in a place of public accommodation. Again, plaintiff points to the conduct listed in paragraph 57 of his amended complaint as establishing retaliation. First Am. Compl. ¶ 65, ECF No. 4. However, as has been discussed above, none of the alleged conduct is attributed to TCC. Without any such conduct alleged against TCC, plaintiff cannot prove the most necessary element of this cause of action.

Thus, for the exact same reasons as the last three causes of action (above), this claim must also be dismissed for failing to raise a cause of action

**e. The claim of violations of nursing home law (Count 9), pursuant to N.Y. Pub. Hlth. Law §§ 2801-d and 2803-c, must be dismissed for failure to state a cause of action because plaintiff was never a patient of the defendant nursing home.**

N.Y. Pub. Hlth. Law § 2801-d (in conjunction with §2803-c) creates a private right of action against nursing homes, allowing nursing home residents to sue a nursing home (also referred as a "residential health care facility." *Baum v. Northern Dutchess Hospital*, 764 F. Supp. 2d 410, 426 (N.D.N.Y. 2011). S*ee* "Definitions" section, N.Y. Pub. Hlth. Law 2801(2) and (3)). "Public Health Law § 2801-d ("Private actions by patients of residential health care facilities") *expressly applies only* to "residential health care facilities," . . ." *Randone v. State of New York*, 30 Misc.3d 335, 338, 910 N.Y.S.2d 355, 358 (N.Y.Ct.Cl.2010), emphasis added; *Novick v. South Nassau Communities Hospital*, 136 A.D.3d 999, 1001 (N.Y. App. Div. 2016).

Here, plaintiff was never a resident of the TCC nursing home. Plaintiff never alleges that he was admitted to TCC. Plaintiff never alleges he was treated by any staff from TCC. Plaintiff never names a single individual staff from TCC as being involved with any one of the allegations in this case.

Therefore, because §§ 2801-d and 2803-c are inapplicable to this case, this cause of action must be dismissed.

**f. The cause of action for Intentional Infliction of Emotional Distress (Count 12 – hereinafter, "IIED") must be dismissed because plaintiff has not alleged the requisite elements.**

"To state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause sever emotional distress, (3) a causal connection between the conduct and the injury, and (4) sever emotional distress." *Specht v. City of New York*, 15 F.4th 594, (2d Cir. 2021), citing *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (N.Y. Ct. of App. 1993). "[T]he conduct must be so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303 (1983).

Here, the Plaintiff does not sufficiently allege all the elements of an IIED claim. This cause of action like several others, contains one paragraph beneath the sub-header, stating that the condct of the defendants (once more, all erroneously lumped together for whatever reason) includes "weaponizing life-sustaining care against a captive patient through fabricated accusations, threats of discharge, public humiliation, physical abuse, and constructive denial of treatment." First Am. Compl. ¶ 72, ECF No. 4. It should go without saying that the statement "weaponizing life-sustaining care" is a wholly conclusory and highly salacious allegation, which also happens to not be supported by any of the facts in this case. Additionally, it bears repeating that the defendant TCC did not treat the patient; the dialysis was provided by ADMS/CPDC, over which TCC has no ownership or control. Thus, TCC could not have weaponized any care or treatment, because they were not involved in Plaintiff's care or treatment.

The Plaintiff lists what he believes to be extreme and outrageous conduct, including: fabricated accusations, threats of discharge, public humiliation, physical abuse, and constructive denial of treatment. First Am. Compl. at ¶ 72, ECF No. 4. The plaintiff does not articulate what the fabricated allegations are, nor when TCC made such allegations. He does not explain what he means by "public humiliation." This is the first time and only time this particular term is mentioned in the Complaint, leaving the defendants guessing at Plaintiff's meaning. Regardless, TCC could not have threatened to discharge nor could they have constructively denied treatment because plaintiff was never admitted to, nor treated by, TCC. Aside from the fact that none of this conduct is alleged to have occurred by TCC nor any of its staff, this conduct does not rise to the level of "extreme and outrageous."

Arguably, "physical abuse" might be considered extreme and outrageous depending on the degree of aggression. However, the only physical abuse alleged in this case, purportedly occurred at the hands of the codefendants, not TCC or its staff. Id. ¶ 5, 41, 94.

Next, plaintiff adds one conclusory statement that the conduct "was intended to and did cause severe emotional distress." He does not provide any factual allegation that supports the notion that TCC intended for the plaintiff to endure emotional distress.

Finally, the Plaintiff does not articulate any cognizable injury, other than to broadly claim "severe emotional distress." "Not all emotional distress is actionable, and thus the tort of intentional infliction of emotional distress requires, inter alia, a showing of "severe emotional distress." *Fellows v. Rosati*, 2019 NY Slip Op 3508 (N.Y. App. Div. 2019), citing *Howell v New York Post Co.,* 81 N.Y.2d 115, 121 (1993). "[C]onclusory assertions are insufficient to set forth a cause of action sounding in the intentional infliction of emotional distress . . ." (*Klein v. Metro. Child Servs., Inc.*, 2012 N.Y. Slip Op 07636 (100 A.D.3d 708, 711). However, in this instance plaintiff has not articulate what his "severe emotional distress" actually is, how it manifested, what affects it has on his life, etc. He merely parrots the fourth element of this cause of action with no supporting facts. This is completely inadequate to establish the existence of this very vague injury.

For these reasons, the IIED claim must be dismissed for failure to state a cause of action.

**g. Plaintiff's claim of premises liability and environmental hazards (Count 16) must be dismissed for failure to state a cause of action, as plaintiff has not sufficiently pled all necessary elements**

"To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate that the [defendant] either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of

reasonable care, it should have corrected it." *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008).

Here, plaintiff once again provides nothing but vague and conclusory statements to suggest that TCC is liable. There are no allegations that TCC created any hazardous conditions, but plaintiff does claim that TCC was allegedly on constructive notice of the hazards. In paragraph 76 of the Amended Complaint, Plaintiff states "Defendants breached their duty to maintain safe premises by exposing anemic ESRD patients to freezing ventilation drafts with broken thermometers, leaking and molded ceilings, loose and exposed wires, and related hazards," which somehow proximately caused the plaintiff "hemodynamic stress and physical harm."

First, plaintiff does not sufficiently allege that TCC had any knowledge, constructive or otherwise, of the condition of the clinic where CPDC/ADMS operated its dialysis machines. Plaintiff's only supporting fact is his claim that when emailing several providers about cold air coming out of a vent in CPDC, the plaintiff carbon-copied "TCC nursing staff." First Am. Compl. 38. However, this does not provide constructive notice. The plaintiff does not say to which email address he sent his criticisms, he does not name any TCC nurses individually, and he does not allege that he ever received a response. We do not know whether TCC staff actually received the email. As a matter of public record, TCC is large nursing home with approximately 680 beds, served by nearly 450 nursing staff, made up roughly of 50 LPNs, 100 RNs, and 300 CNAs. And like many other nursing homes, TCC has a fairly consistent Nurse turnover rate of about 40% on average over 12 months. For all we know, the email was sent to a defunct address, a former employee, or to an individual who has no authority or duty to act on this information.

Second, the email that was allegedly sent to "TCC nursing staff" <u>only</u> mentions that plaintiff sat "directly beneath a vent blowing cold air while the outdoor temperature was 36

[degrees] Fahrenheit . . ." and that "both facility thermometers" were broken. First Am. Compl. ¶ 38, ECF No. 4. The email does not mention how cold the air was inside the room, how long Plaintiff sat in the cold air, whether he asked to be moved to a new chair, or why he may have been unable to move him. He does mention that he was "under two blankets," suggesting that somebody at CPDC responded to his chilliness. Id. at ¶ 38. However, vaguely cold air, in and of itself, is not an inherently hazardous condition.

Third, the email does not mention anything about "leaking and molded ceilings, loose and exposed wires, and related hazards." Id. ¶ 76. So, at best, the Plaintiff sent out a very ambiguous email into the ether, possibly to unknown TCC nursing staff (or perhaps no one at all), discussing cold air coming out of a vent. Plaintiff does not allege that he ever received a response to this email from anyone at TCC. So, we cannot say that anyone ever acknowledged receiving. In no way do these facts place defendant TCC on notice of any hazardous conditions in an area of their building that is rented out to an entirely-separate business entity.

Even assuming, in arguendo, that these hazardous conditions existed, the Plaintiff does not articulate how they actually affected him. He does not state that he was electrocuted by loose wires nor that he developed an infection or allergic reaction to "leaking and moldy" ceilings. He simply claims these hazards existed, and that they somehow magically injured him.

Finally, plaintiff does not claim any cognizable injury from any of these alleged hazards, but instead very broadly claims that they proximately caused "hemodynamic stress and physical harm." Id. ¶ 76. "Physical harm," without additional supporting facts, is far too vague of an injury for any plaintiff's Complaint to withstand a motion to dismiss. It is just another conclusory statement by Mr. Wimberly. As for "hemodynamic stress," this literally occurs to every human being every time their heart beats. The pumping action of a heart creates force (i.e. "stress") on the

walls of the blood vessels. This is called "systolic pressure," and it is a natural biological process that occurs in every warm-blooded creature on the planet. This does not require any expert knowledge to understand,[2] nor is it suggestive of any type of specific injury.

Thus, because the Plaintiff has not sufficiently pled that TCC was on notice of any hazardous conditions, how these hazardous conditions injured him, nor that he had any cognizable injury, the cause of action for premises liability must be dismissed.

**h. The claim for Declaratory Judgment (Count 20) pursuant to 28 U.S.C. §§ 2201–2202 must be dismissed because defendant TCC was not properly alleged to be involved in any retaliation against plaintiff, it is duplicative of all other causes of action, this is not an appropriate case of a declaratory judgment, and such declaratory judgment will provide no actual remedy to plaintiff.**

This is not a case for a declaratory judgment. The Second Circuit in *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998 (2d Cir.1969)) developed a two-part test to determine whether Declaratory Judgment may be appropriate. "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 1001, internal quotations and citation omitted. The DJA is "procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950), and "does not create an independent cause of action," *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

Here, plaintiff has not established either prong of the test. First, a Declaratory Judgment Action (DJA) would not serve any useful purpose in clarifying and settling the legal relations in issue. DJAs are usually sought out when a party wants to prevent an injury or breach from occurring before it happens, for instance in contract law where two parties disagree on a term of a

[2] Interestingly, another example of something that causes hemodynamic stress would be dialysis.

contract but neither party has broken the contract yet. In this case, purportedly the plaintiff has already been injured by the conduct of the defendants. If indeed any of the defendants are liable based upon the Amended Complaint, then the other enumerated causes of action would already provide the Plaintiff with an avenue for relief. A Declaratory Judgment on top of this does nothing to help Plaintiff. In this way, this claim is essentially duplicative of the other causes of action.

Second, a Declaratory Judgment will not provide relief from uncertainty, insecurity, and controversy, above and beyond what the other causes of action will resolve. Plaintiff has already allegedly been injured. There is no uncertain future injury that might be avoided by a DJA.

Additionally, this cause of action must be dismissed because plaintiff has not established any controversy between himself and defendant TCC. As shown by every other section of this brief, the plaintiff simply has no viable causes of action against TCC.

Therefore, the Declaratory Judgment claim must also be dismissed for failing to raise a cause of action.

**i. Plaintiff's claim of a Conspiracy to Deprive of Equal Protection (Count 24) pursuant to 42 U.S.C. § 1985(3) must be dismissed because plaintiff has failed to plead all the necessary elements of this cause of action.**

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 2015 WL 4477342, 2015 U.S. App. LEXIS 12677 (2d Cir. 2015), internal quotations omitted, citing *Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir.2006). Further, "[a] private conspiracy claim

under the deprivation clause of § 1985(3) requires "[1] interfere[nce] with [a plaintiff's] constitutional rights, [and] [2] some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 311 F. Supp. 3d 514, at 548 (E.D.N.Y. Apr. 23, 2018), citing *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286, 290-91 (2d Cir. 1992).

First, plaintiff has failed to allege that defendant TCC was involved in any conspiracy, other than a conclusory statement that all the defendant conspired. First Am. Compl. ¶ 93, ECF No. 4. To establish a civil conspiracy, plaintiff must allege a (1) cognizable primary tort; (2) an agreement between two or more parties; 3) an overt act in furtherance of the agreement; (4) the parties' intentional participation in the furtherance of a plan or purpose; and 5) resulting damage or injury. *Faulkner v City of Yonkers*, 105 A.D.3d 899, 900 [N.Y. App. Div. 2013]), see *Abacus Fed. Sav. Bank v Lim*, 75 A.D.3d 472, 474 [N.Y. App. Div 2010], *World Wrestling Fedn. Entertainment, Inc. v Bozell*, 142 F.Supp. 2d 514, 532 [S.D.N.Y. 2001]). “A bare conclusory allegation of conspiracy is usually held insufficient” (*Faulkner*, at 901). Here, the Plaintiff has not sufficiently alleged any agreement between TCC and the other parties to participate in a conspiracy. There is simply no fact asserted that there was a “meeting of the minds” between TCC and any codefendant, nor that there was any common purpose or understanding. It was not alleged that anyone from TCC interacted with any of the codefendants in any way.

Next, plaintiff fails to explain what “equal protection(s)” he was deprived of. He references “the letter” – possible referring to the January 30, 2025 letter from Goldberg Segalla, but this is unclear as the Complaints mentions more than one letter (First Am. Compl. ¶27, 51, ECF No. 4), the Behavioral Plan, the false statements (he does not articulate what false statements anyone from TCC made – or whether they made any statements at all), and the discharge proceedings, injuring

Plaintiff. It is wholly unknown how any of these things could possibly have deprived Plaintiff of any equal protection because plaintiff does not say.

Next, while plaintiff inferentially defines the protected "class" upon which he was discriminated against as "disabled patients" (Id. ¶ 92), it is not clear how any such discrimination took place. It was certainly not by any discrimination by TCC staff who are not alleged to have had any interaction with the plaintiff.

Finally, a case must be dismissed where "there exists no sufficient allegation of racial or class-based invidiously discriminatory animus. . ." *Kush v. Rutledge*, 460 U.S. 719 (1983); *see Dolan v. Connolly*, 794 F.3d 290, 296, 2015 WL 4477342, 2015 U.S. App. LEXIS 12677 (2d Cir. 2015), where the court found that "[t]he conspiracy claim failed because [plaintiff] did not identify membership in a protected class for purposes of Section 1985(3) relief." Here, Plaintiff broadly claims that the defendants were motivated by "animus," but this is nothing more than another conclusory statement. He does not allege any facts to suggest that any of the defendants, but most specifically TCC, have any animus towards the Plaintiff on the basis of his disability. Moreover, this assertion is patently ludicrous because <u>every patient</u> that comes into CPDC for dialysis is disabled under the meaning as defined by the ADA[3]. For the Defendants to have animus against their own clients and discriminate against them for being disabled is imprudent, self-defeating, and the very definition of poor business acumen. The very purpose of any dialysis center is to care for, and improve the lives of their clients by treating their disability. To have animus towards their clientele would be to scare them aware, thereby destroying their business. It simply defies basic logic.

[3] 42 U.S.C. § 12102 defines "disability," in part, as a physical or mental impairment that substantially limits one or more major life activities of such individual.

Therefore, because Plaintiff has not sufficiently alleged all elements of this claim, his claims arising under 42 U.S.C, § 1985(3) to Deprive Plaintiff of Equal Protection must also be dismissed for failure to state a cause of action.

**j. The cause of action for conspiracy to "Obstruct Justice and Deter Federal-Court Participation" (Count 25) pursuant to 42 U.S.C. § 1985(2), must be dismissed for being insufficiently pled**

42 U.S.C. § 1985(2) allows for a private right of action against individuals who conspire to deter a witness [1] by force, intimidation or threat; [2] by injury to person or property; [3] to influence a verdict, presentment, or indictment, any party or witness in any court of the United States; or [4] impeding, hindering, obstructing, or defeating, in any manner, the due course of justice with intent to deny equal protections.

As elaborated above repeatedly, the Plaintiff has not alleged the requisite elements of a conspiracy, nor does he allege that TCC was involved in any such conspiracy, other than plaintiff's vague add conclusory insistence that some conspiracy existed.

Plaintiff alleges that the defendants intimidate or threatened him "through the cease-and-desist letter, the fabricated narrative presented to the Court, the Behavioral Plan, the treatment denials, and the discharge proceedings." First Am. Compl. ¶ 93. As pointed out in section "i" above, none of the things are related to TCC. The cease-and-desist letter was allegedly sent to plaintiff by the Goldberg Segalla firm, and TCC is not alleged to have been involved with the creation or sending of the letter. Again, the behavior plan, the treatment denials, and the discharge proceedings are all attributed to codefendants ADMS, CPDC, and the individually named defendants who work at these entities. Plaintiff does not allege that TCC had any part in this, nor could they, as TCC did not treat the plaintiff.

Thus, plaintiff fails to state a cause of action, and any claims to obstruct justice pursuant to 42 U.S.C. § 1985(2) must be dismissed.

**k. The claims of Negligent Supervision (Count 27) must be dismissed because defendant TCC had no duty to supervise plaintiff's dialysis treatment at CPDC**

"To establish a cause of action based on negligent hiring, negligent retention, [negligent training,] or negligent supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Sallustio v. Southern Westchester Bd. of Coop. Educ. Servs*., 2025 NY Slip Op 00690 (N.Y. App. Div 2025).

In this matter, TCC had no duty to supervise any of the other defendants' employees. The individuals alleged to have taken any actions in this matter were employees or officers of CPDC, ADMS, or Goldberg Segalla LLP. First Am. Compl. ¶ 12-15. No employees of TCC are alleged in the complaint to have been involved in any type of care, treatment, or interaction with the plaintiff.

Further, as defendant TCC has no ownership over any of the codefendant entities, they cannot be held vicariously liable for ADMS, CPDC, or Goldberg Segalla's supposed negligent supervision of their own employees.

Thus, negligent supervision must also be dismissed for failure to state a cause of action.

**II.**

**<u>LEAVE TO AMEND SHOULD BE DENIED</u>**

As codefendant counsel for the Goldberg Segalla defendants point out in their memorandum in support of their motion to dismiss (ECF No. 50), the defects in Plaintiff's claims are substantive, not technical. Plaintiff has already brought a lawsuit against codefendant ADMS premised on the exact same facts and circumstances as are alleged in this case (*Wimberly v. Atlantic Dialysis Management Services, LLC*, Case No. 1:24-cv-09269-JPO (U.S.D.C. S.D.N.Y.). That lawsuit was quickly dismissed, just as this one should be.

While TCC was not a named party to the first action, Plaintiff's alleged facts in that case were just as hollow and his causes of action were similarly under-pled. He does not allege any interaction with anyone from TCC, he does not have any real injury caused by TCC, and the only time he ever references "pain" in his entire complaint is in connection with an action allegedly taken by one of the codefendants (FAUSI). First Am. Compl. ¶ 70.

TCC is simply not a proper party to this action, and the plaintiff should not be granted to leave to take another bite of the apple.

**CONCLUSION**

As the foregoing arguments provide, the Complaint must be dismissed as to TCC for failure to state a cause of action. It is clear that this defendant does not belong in this action as the Plaintiff does not plead any viable claims against TCC, nor was he actually injured by any conduct or TCC's staff.

It is respectfully submitted that this Court should grant the within motion pursuant to F.R.C.P § 12(b)(6), render an order that the Amended Complaint be dismissed in its entirety with prejudice and for such other and further relief as this Court finds just and proper.

Dated: Garden City, NY
October 16, 2026

Respectfully submitted,

By: *Charles E. Kutner*

/s/ Charles E. Kutner, Esq. (8360)
666 Old Country Road, Ste. 401
Garden City, NY 11530
Tel. (516) 689-5448

Attorneys for Defendant
TERENCE CARDINAL COOKE
HEALTH CARE CENTER

TO: Jason Wimberly
231 E. 117th St. Apt. 5D
New York, NY 10035
Plaintiff *pro se*

THE CHARTWELL LAW OFFICES LLP
140 Grand Street, Suite 900
White Plains, New York 10601
Attorneys for Defendants
ATLANTIC DIALYSIS MANAGEMENT SERVICES,
CENTRAL PARK DIALYSIS CENTER, LORNA BAUTISTA,
R.N., ROSEMARY JOHNSON, RACHEL JAGDEO,
JODUMUTT GANESH BHAT, M.D., PREMILA BHAT,
HILARIO FLAUTA

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
Tel. No. (914) 347-2600
Attorneys for Defendants
GOLDBERG SEGALLA LLP, SCOTT R. GREEN,
CHARLES LAZO

**WORD COUNT CERTIFICATION**

I hereby certify, pursuant to Local Rule 7.1(c) of the United States District Court, Southern District of New York, that the total number of words in this Memorandum of Law, exclusive of the parts exempted by the Local Rule, is 6,225 and that this document complies with the word count limit set forth in Local Rule 7.1(c).

*Charles E. Kutner*
Charles E. Kutner, Esq. (8360)